| | |
|---|---|
| S.B., THE MINOR STUDENT, BY AND THROUGH N.B., THE STUDENT'S PARENT<br>Plaintiffs, | )<br>)<br>)<br>)<br>) |
| v. | )<br>) |
| WILLIAMSON COUNTY BOARD OF EDUCATION AND STATE OF TENNESSEE DEPARTMENT OF EDUCATION<br>Defendant. | )<br>)<br>)<br>)<br>)<br>) |

# COMPLAINT

**COMES THE PLAINTIFFS, S.B.,** through his parent N.B., filing this Complaint against Williamson County Board of Education and Tennessee Department of Education. They show:

## I. PARTIES, JURISDICTION AND VENUE

1. S.B. resides with his parents in Williamson County, Tennessee. S.B. has a qualifying disability under the Individuals with Disabilities Education Act ("IDEA") that adversely impacts his education and requires special education.

2. Williamson County Board of Education ("WCBOE") is the legal entity charged with administering public education to students in Williamson County, Tennessee. It receives state and federal funding to provide special education to persons with a disability under the IDEA.

3. Defendant Tennessee Department of Education ("TDOE") is the state education agency ("SEA") with the responsibility for ensuring that mandates of the IDEA are carried out by the local education agencies, of which Defendant WCBOE is one. "Any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. §1415(a).

4. Jurisdiction is conferred upon this Court by the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1415(i)(2)(A) and 1415(i)(3)(A), which provides district courts of the United States with jurisdiction over any action brought under the IDEA, without regard to the amount in controversy.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b), as Plaintiffs reside within the Middle District of Tennessee and all events and omissions giving rise to this Complaint occurred in this judicial district.

6. Administrative exhaustion of the underlying case (APD Case No. 07.03-236314J) occurred through a state due process hearing with a Final Order entered by Administrative Law Judge ("ALJ") Claudia Padfield on March 4, 2024. This appeal is timely brought within sixty (60) days after the issuance of the Final Order in the administrative proceedings. Plaintiffs seek, *inter alia*, reversal of the ALJ's decision and *de novo* review.

## II.  PROCEDURAL HISTORY

7. N.B. initially filed a *pro se* request for a due process hearing after WCBOE determined that S.B.'s conduct related to a disciplinary infraction was not a manifestation of his disability and thereafter changed his placement to the alternative school ("ALC").

8. N.B. subsequently retained an attorney who filed an amended due process complaint that included the following claims: (a) WCBOE failed to properly consider whether S.B.'s conduct for which he was sent to its alternative school was a manifestation of his disability; (b) WCBOE failed to identify and evaluate S.B.; (c) WCBOE failed to design an Individualized Education Program ("IEP") that provides S.B. with a free appropriate public education ("FAPE"); and (d) WCBOE intentionally interfered with the parent's procedural safeguards provided by the IDEA.

9. Shortly after the amended complaint was filed, a school resource officer ("SRO"), with the assistance of WCBOE personnel, filed a juvenile petition against S.B. for the same conduct that was the basis for the manifestation determination hearing.

10. Plaintiffs then filed a motion for leave to amend their due process complaint to include a retaliation claim based on WCBOE's involvement in the juvenile petition filing. That motion was due to be granted. The ALJ denied the motion.

11. Prior to hearing the ALJ dismissed Plaintiffs' manifestation determination appeal claim *sua sponte* because she erroneously determined S.B.'s return from the ALC to his home school rendered that claim moot. At hearing the ALJ again refused to allow that claim to go forward.

12. In addition to these procedural errors, the ALJ also failed to provide Plaintiffs with a fair hearing by among other things, creating a strict time limit whereby the hearing had to be concluded in one day. The time limitations were further made such that Petitioners and Respondent split their time equally, even though the Petitioners bore the burden of proof. This limited the Plaintiffs to only being able to put on two witnesses in their case-in-chief. The hearing officer also severely limited Plaintiff's cross-examination of witnesses, even though 20 USC 1415(h)(2) specifically afforded the rights of the Plaintiffs to cross examine witnesses.

13. The final order itself is also problematic in that it fails to contain any citations to the record and omits references to facts and evidence that are favorable to the Plaintiffs.

### III. THE UNDERLYING CASE

14. S.B. is a 14-year-old student currently enrolled in the eighth grade at Brentwood Middle School ("BMS"), a school within the WCBOE school district.

15. S.B. has attended BMS since sixth grade.

16. S.B. has struggled with reading since elementary school.

17. During his sixth and seventh grade years he received general education reading interventions through WCBOE's RTI program.

18. Despite the reading intervention, S.B.'s progress in reading was inconsistent.

19. S.B. also struggled with behavior and had over 21 disciplinary infractions between September 6, 2021, and September 22, 2023.

20. Because of S.B.'s ethnic heritage, S.B. and his mother are subjected to bullying and discrimination. This has been brought directly to school administrative staff who ignore it because either they are incompetent or participants in it.

21. In January of 2023, N.B. emailed Robin Anglim, a WCBOE reading specialist, to express her concerns over S.B.'s reading difficulties.

22. WCBOE then referred S.B. for a psychoeducational evaluation which was conducted on March 9 and 23, 2023.

23. Although there were 17 documented behavioral incidents at the time, the WCBOE psychologist conducting the evaluation did not evaluate S.B. for behavioral deficits.

24. On April 12, 2023, the Individual Education Program ("IEP") team met to discuss the completed psychoeducational evaluation and determined that S.B. qualified for special education in the category of Specific Learning Disability in the area of Reading Comprehension.

25. On May 8, 2023, the IEP team met and developed S.B.'s initial IEP. The IEP did not include any behavior support.

26. In August of 2023, S.B. received an in-school suspension.

27. In September of 2023, S.B. received a second in-school suspension.

28. On October 3, 2023, N.B. met with WCBOE personnel to discuss S.B.'s behavior struggles.

29. At the meeting N.B. requested that a behavior plan be developed for S.B.

30. In response, WCBOE agreed to develop a Tier II behavior support plan.

31. On October 27, 2023, the IEP team met to review the behavior support plan. No changes were made to the IEP. The principal and assistant principal, Dr. Bill Harlin Abigail Fletcher, advised the parent that she could anticipate a juvenile charge.

32. Prior to October 31, 2023 the behavior support plan was not implemented.

33. On October 31, 2023, S.B. spit on another student in BMS's cafeteria. On or about October 31, 2023, BMS administrators Dr. Bill Harlin and Abigail Fletcher stated they would be charging S.B. in the Williamson County Juvenile Court for the conduct made the subject of the manifestation determination.

34. On November 2, 2023, a manifestation determining meeting was held and WCBOE personnel determined that the cafeteria incident was not a manifestation of S.B.'s disability of Specific Learning Disability.

35. At the manifestation determination meeting the school team refused to consider anything other than whether the incident was a manifestation of a reading comprehension disability and neglected to analyze it as whether it was a manifestation of a behavioral disability.

36. WCBOE then changed S.B.'s educational placement from BMS to the ALC for a period of 20 days.

37. Defendant TDOE had a duty to provide Plaintiffs with an appeal of WCBOE's manifestation determination. 20 USC §1415

38. Defendant TDOE refused to provide the Plaintiffs with an appeal of WCBOE's manifestation determination.

39. TDOE is unable to provide the procedural safeguards in the IDEA to S.B. because it is wanton in its obligations.

40. Again, on November 2, 2023, WCBOE and Dr. Bill Harlin stated that juvenile charges would be filed against S.B.

41. On November 4, 2023, N.B. made a specific inquiry of WCBOE and Dr. Harlin on the status of the proposed juvenile charges. Dr. Harlin intentionally chose not to respond to the inquiry.

42. On November 5, 2023, N.B. emailed WCBOE's Leigh Webb with her concerns about the disciplinary action being taken and was advised that a Mrs.

Hayes would contact her; whereby, she was told by Mrs. Hayes that filing due process would be pointless.

43. N.B. filed a due process complaint on November 7, but changed her mind temporarily. On November 8 N.B. made the final decision to reverse course and file due process.

44. On or about November 10, 2023, N.B. had retained counsel, notified WCBOE of same, and moved to amend the Complaint to make additional allegations of violations.

45. On November 17, 2023, two weeks after Dr. Harlin stated that he and WCBOE would file juvenile charges, and more than one week after N.B.'s filing of the due process complaint, WCBOE, acting by and through Dr. Bill Harlin, Abigail Fletcher and an SRO assigned to the school filed a juvenile complaint against S.B.

46. The SRO never witnessed the conduct.

47. The juvenile complaint was additional planned punishment of the student that was not considered by the manifestation determination team, despite more than one member's determination to file the juvenile complaint.

48. The juvenile complaint was filed to punish the Plaintiffs for filing due process and to punish the student for his conduct made the basis of the Manifestation Determination.

49. The juvenile complaint is not independent of WCBOE and was an additional tactic by WCBOE to interfere and/or influence the outcome of the due process proceedings.

50. After the filing of the due process complaint, on November 27, 2023, the IEP team met and agreed that S.B. now exhibited a pattern of behaviors that impeded his learning.

51. S.B. and N.B. have sought educational opportunities elsewhere and been denied access specifically as a result of the Defendant's assignment of S.B. to alternative school.

## IV. LEGAL CLAIMS

52. The foregoing facts are incorporated.

<u>IDEA</u>

53. WCBOE failed to properly consider whether the student's conduct for which he was sent to its alternative school was a manifestation of his disability.

54. WCBOE predetermined S.B.'s placement at the alternative school.

55. WCBOE failed to educate S.B. in his least restrictive environment.

56. WCBOE failed to develop an IEP that provided S.B. with FAPE.

57. WCBOE failed to evaluate S.B. for special education services in a timely manner.

58. WCBOE retaliated against Plaintiffs by filing a juvenile petition in response to N.B.'s filing a due process complaint against WCBOE.

59. S.B. has been denied an appeal of Defendant WCBOE's manifestation determination. Defendant TDOE was responsible for providing the appeal and failed to do so.

60. But for occasionally distributing boilerplate literature, in the absence of Court intervention Defendant TDOE will continue to take a careless approach to the procedural safeguards of the IDEA.

## §504 OF THE REHABILITATION ACT AND TITLE II OF THE ADA

61. S.B. is a person with a disability, a history of a disability, and is perceived as disabled pursuant to 42 U.S.C. §12102, and 29 U.S.C. §706. N.B. and has a relationship and association with S.B. of which the defendant is aware, in that N.B. is one if the parents of S.B.

62. WCBOE is a public entity in accordance with 42 U.S.C. §12131(1). It receives federal financial assistance pursuant to §504.

63. Plaintiffs are otherwise "qualified". 29 U.S.C. §794; 34 C.F.R. 104.3; 42 U.S.C. §12132; 34 C.F.R. 35.104.

64. WCBOE is both a recipient of federal financial assistance and a "public entity" and thus subject to compliance with Section 504 and the ADA. 42 U.S.C. §12131(1)(B).

65. Defendant has intentionally, and with willful and malicious disregard of Plaintiffs' federally protected rights, discriminated against Plaintiffs based on S.B.'s disabilities and/or N.B.'s association with a person with a disability. Defendant has acted in bad faith and exercised gross misjudgment.

66. Specifically, and without limitation, Defendant has refused to ensure that S.B. was able to participate in and access the benefits of its services and educational program in the same manner as his non-disabled peers.

67. WCBOE failed to provide access and reasonably accommodate Plaintiffs, including S.B., and it failed to make reasonable modifications in the policies, practices, or procedures when the modifications were necessary to avoid discrimination.

68. WCBOE was required, but failed to consider S.B.'s unique needs for services, as well as all alternatives, prior to excluding him from its general educational programming. Neither accommodating S.B., nor modifying the WCBOE's applications of its policies, practices, or procedures so as to allow S.B. participation in the WCBOE's educational program would have caused undue burden or constituted a fundamental change in the operations of the WCBOE's programs. 28 C.F.R. 35.130(b)(7) and (8); 34 C.F.R. 104.35.

69. WCBOE, by its actions and inactions as described herein, has, intentionally, and with the willful and reckless disregard for the rights of Plaintiffs, failed to provide S.B. with a non-discriminatory public educational program which is designed to meet his unique needs.

70. Contrary to the mandates of §504, the WCBOE has intentionally and with reckless disregard, denied S.B. the benefits of equal opportunities to enjoy and

participate in educational programs and services as compared with students who are not disabled. 29 U.S.C. §794.

## IV. RELIEF

71. Based upon all the facts, and the violations of the described herein, Plaintiffs seek:

   A. A modified de novo review of this matter and a finding in favor of Plaintiffs on all issues.

   B. Supplementation of the record with additional evidence;

   C. An appeal of the Defendant's manifestation determination and a finding that S.B.'s behavior was a manifestation of his behavior;

   D. Declaratory relief that WCBOE violated S.B. and N.B.'s rights under the Individuals with Disabilities Education Act, to a free, appropriate public education; S.B. and N.B.'s rights under §504 of the Rehabilitation Act; and S.B.'s rights under Title II of the ADA.

   E. Declaratory relief that WCBOE retaliated against Plaintiffs for asserting their IDEA due process rights;

   F. An award of damages for lost educational opportunity;

   G. An award of damages for emotional distress;

   H. An order requiring WCBOE to provide compensatory education for the time that S.B. was denied a FAPE and when S.B. was required to attend the ALC;

I. An order requiring WCBOE to expunge all disciplinary actions related to the October 31st cafeteria incident from S.B.'s educational record;

J. An Order that directs Defendant TDOE to comply with the requoremtns of the IDEA to provide the very real procedural safeguards that disabled students were so entitled; and,

K. All reasonable attorneys' fees and costs expended through the due process proceeding, and for this action.

Respectfully submitted,

/s/ Michael F. Braun
MICHAEL F. BRAUN (BPR 032669)
5016 Centennial Boulevard, Ste. 200
Nashville, TN 37209
(615) 378-8942
Fax: (629) 255-4445
Email: mfb@braun-law.com

**ATTORNEY FOR PLAINTIFFS**
