**IN THE UNITED STATES DISTRICT COURT FOR**
**THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **S.B., The Minor Student by and through N.B., the Student's Parent** | ) | |
| **Plaintiffs,** | ) | **No. 3:24-cv-00546** |
| **Williamson County Board of Education And State of Tennessee Department of Education,** | ) | **Chief Judge William L. Campbell, Jr.** |
| | ) | **Magistrate Judge Alistair E. Newbern** |
| **Defendants.** | ) | |

---

**PROPOSED CASE MANAGEMENT ORDER**

---

**A. JURISDICTION:**

**Plaintiffs' Position:**

The Court has subject matter jurisdiction over all of Plaintiffs' claims. This Court has jurisdiction over this action under the Rehabilitation Act of 1973, 29 U.S.C. § 794, as well as Title II of the Americans with Disabilities Act, 42 U.S.C. § § 12101 et. seq. ("ADA"), the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq, and 42 U.S.C. § 1983, and the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"). The Court has supplemental jurisdiction over the additional state law claims as they are so related to the federal claims in the action that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367. Personal jurisdiction and venue are not disputed.

**Defendant WCBOE's Position:**

The Court has subject matter jurisdiction over Plaintiffs' claims exhausted in the underlying due process matter pursuant to the Individuals with Disabilities Education Act

("IDEA"). 20 U.S.C. §1415(i)(2-3) and 28 U.S.C. §1331 . The parties dispute whether the Court has subject matter jurisdiction over all of Plaintiffs' IDEA claims. The Court has subject matter jurisdiction over Plaintiffs' claims arising under §504 of the Rehabilitation Act, the Americans with Disabilities Act, Title VI of the Civil Rights Act, and the Equal Protection Clause of the 14th Amendment (via 42 USC §1983), except to the extent relief is sought that could otherwise be addressed pursuant to the IDEA.

**Defendant TDOE's Position**:

This Court lacks subject matter jurisdiction over S.B.'s IDEA claim against TDOE, and as alleged, all other claims fall against WCBOE alone.

**B. BRIEF THEORIES OF THE PARTIES:**

**For Plaintiff:**

For most of his time in Defendant WCBOE's school's S.B. has suffered with reading deficits which, in turn, contributed to his undiagnosed behavioral disabilities. In middle school he suffered from bullying and racial and religious discrimination because he doesn't look like other students, his mother wears a hajib, he cannot keep up in some classes (though he does exceptionally well in math), his birthday is on September 11th, and his athleticism creates jealousy. Rather than take seriously this student's needs, WCBOE punishes him.

For years his mother has advocated for his special needs to little avail. When Defendant WCBOE finally developed an IEP for reading comprehension, aside from its other inadequacies, it ignored S.B.'s undiagnosed behavioral disabilities. Although purporting to address S.B.'s behavioral disabilities with a meeting, Defendant WCBOE sent S.B. to school-world jail for spitting on one of their bullying students instead. Not only

did Defendant WCBOE fail to address S.B.'s disabilities and wholly fail to address the psychological impact of the ongoing racial and religious discrimination and bullying directed at S.B. (and its role in his conduct), but Defendant WCBOE also followed up with juvenile charges- for spitting. They did that because they join in the racism and discrimination.

The procedural protections of the IDEA offered something but were void of any actual relief. N.B. was told by the Defendant her *pro se* due process complaint was useless since her son would never have a hearing in time. Her attorney tried to appeal the school's manifestation determination, but a state hearing officer (representing Defendant TDOE) denied S.B. that statutory hearing *sua sponte*. Defendant TDOE's actions, therefore, denied S.B. his due process rights mandated by the IDEA.

**For Defendant WCBOE:**

At all times relevant to the issues that are the subject of the appeal from the underlying due process case, Plaintiff S.B. was a student at Brentwood Middle School ("BMS") within the Williamson County School District. S.B. was initially evaluated for eligibility for special education in February 2023 during his seventh-grade school year after his parent referred him for an evaluation due to a suspected learning disability in reading. Prior to the referral, WCBOE did not suspect a specific learning disability in reading because S.B. had made substantial progress when he was provided with general education interventions through its Response to Intervention "RTI" program, including exiting the RTI program at the end of his sixth-grade school year due meeting his goals and grade level expectations in reading. At the conclusion of the evaluation, the Individualized Education ("IEP") Team determined that S.B. was eligible for special education under the category of

Specific Learning Disorder ("SLD") in reading comprehension. Thereafter, an IEP team meeting was convened to develop an initial IEP during which included areas of exceptionality (need) in basic reading, reading comprehension, and transition-vocational behavior. The proposed IEP included goals for all areas of exceptionality, as well as inclusive support in general education classes (English Language Arts, Social Studies, Science), directed study focus in a special education setting, and special education reading intervention.

At no time prior to the filing of the due process complaint did WCBOE suspect a disability—an Other Health Impairment or an Emotional Disturbance—because of his conduct violations. S.B. did not have a diagnosed health or mental health diagnosis. Additionally, S.B. did not have clear signs of any type of emotional disturbance to a marked degree and over an extended period time. Instead, S.B. would sometimes violate school rules to try to prove to peers that he was stronger and more athletic and because he thought he could get away with the conduct because adults were not watching. Moreover, when S.B.'s parents requested a meeting with the BMS principal at the beginning of S.B.'s 8th grade school year to discuss concerns regarding S.B.'s conduct violations at school, the school immediately agreed to implement general education supports for S.B., which included weekly meetings with the principal and/or assistant principal, participation in an upcoming group conducted by the school counselor, a referral for counseling, check-ins with S.B.'s wrestling coach, and the scheduling of an IEP meeting to discuss, as an IEP team, any additional supports that might be needed. Shortly thereafter, the IEP team met to discuss the concerns and determined that no additional special education services were

needed and the plan that had been developed as a general education intervention was sufficient.

On October 31, 2023, S.B. confrontationally spit in the face of another student. As a result of the spitting incident, which constituted a code of conduct violation that could warrant a removal to the WCBOE Alternative Learning Center ("ALC"), a manifestation determination review ("MDR") meeting was convened. During the MDR meeting, the IEP team discussed how S.B.'s disability of SLD typically manifested in the school setting and ultimately determined that the act of spitting on another student was not a manifestation of S.B.'s SLD. Based on that determination, S.B. was remanded to the ALC for up to thirty days as the disciplinary action for the spitting incident.

Plaintiff S.B. filed the underlying due process case *pro se* on November 7, 2023. Plaintiff S.B. subsequently retained counsel who filed an amended complaint on November 10, 2023 alleging the spitting conduct should have been a manifestation of S.B.'s disability, WCBOE predetermined the manifestation determination, WCBOE failed to properly identify and evaluate S.B. in all suspected areas of disability, and WCBOE failed to design an IEP that provided S.B. with FAPE. Plaintiffs sought the following relief at the administrative level: hearing officer overrule the manifestation determination, require WCBOE to commence a functional behavior assessment by an outside evaluator, return S.B. to BMS, further evaluation to determine whether or not S.B. had other disabilities, development of an IEP that provided S.B. with FAPE, and direct reading instruction by a trained Orton Gillingham reading instructor. However, during a pre-hearing conference on January 8, 2024, Plaintiffs acknowledged that one of the remedies sought – return to BMS from the ALC—had been accomplished, as S.B. had done well behaviorally at the ALC

and was, thus, allowed to return to BMS on December 11, 2023. Thus, the ALJ dismissed Petitioners' manifestation determination claims as moot because the relief sought (re-placement in the general education setting after a disciplinary removal to the ALC) was no longer at issue as S.B. had been back to his school of zone since December 11, 2023.

Following a due process hearing on February 8, 2024 on Plaintiffs' remaining claims, the ALJ issued a final order on March 4, 2024 finding that Plaintiffs had failed to meet their burden of proof and that WCBOE was the prevailing party on all claims. WCBOE asserts that it is entitled to judgment in its favor on all issues based upon the Court's independent review of the administrative record.

WCBOE denies that it discriminated against Plaintiff or that it harassed or was deliberately indifferent to student harassment of Plaintiff, based upon disability, race, or religion. WCBOE has no policy, practice or custom that resulted in a deprivation of Plaintiffs' rights under the Americans with Disabilities Act, Rehabilitation Act, Title VI, or the Equal Protection Clause of the 14th Amendment. Plaintiff cannot establish intentional discrimination based upon a disability, nor deliberate indifference sufficient to establish a violation of 42 U.S.C. 1983, via either Title VI of the Civil Rights Act or the Equal Protection Clause of the United States Constitution. WCBOE further denies that it retaliated against Plaintiff for exercise of any protected right under §504 or the Americans with Disabilities Act. To the extent the Amended Complaint can be read to state a retaliation claim, the claim appears to be based upon a juvenile petition filed by law enforcement, but school administrators did not direct any such filing, nor were they even aware of such filing before it occurred. WCBOE contends that it enjoys immunity from

the state law negligence and negligence per se claims pursuant to the civil rights exception to the Governmental Tort Liability Act.

**<u>For Defendant TDOE:</u>**

S.B. lacks standing to sue TDOE over an independent ALJ's decision about past conduct. Regardless, he failed to state an IDEA claim against TDOE by not exhausting his administrative remedies below. All S.B.'s other claims fall against WCBOE alone.

## C. ISSUES RESOLVED:

**<u>Plaintiffs' Position.</u>**

Jurisdiction and venue as to IDEA, 504 and ADA claims against WCBOE.

**<u>Defendant WCBOE's position:</u>**

Personal jurisdiction and venue have been resolved as to the claims against WCBOE that are related to the appeal of the final order in the underlying due process matter and to the claims under the ADA, Rehabilitation Act, and 42 U.S.C. §1983 (to the extent those claims do not seek relief that can be obtained under the IDEA).

**<u>Defendant TDOE's position</u>:**

TDOE does not contest personal jurisdiction or venue.

## D. **ISSUES STILL IN DISPUTE**:

D.1. Whether this Court has subject matter jurisdiction over all of Plaintiffs' IDEA claims.

D.2. Whether S.B. failed to exhaust his administrative remedies for claims against TDOE.

D.3. Whether the administrative record supports the decisions of the ALJ with respect to the claims against WCBOE that are related to the appeal of the final order in the underlying due process matter.

D.4 Whether the administrative record supports the decisions of the ALJ with respect to the claims against TDOE that are related to the appeal of the final order in the underlying due process matter.

D.5. Whether Plaintiffs' claims regarding the manifestation determination are moot.

D.6. Whether the ALJ committed reversible error.

D.7. All issues regarding liability, relief, and damages.

E. **INITIAL DISCLOSURES**: Pursuant to Federal Rule of Civil Procedure 26(a)(1)(B)(i), the parties are exempt from the initial disclosure requirements of Rule 26(a)(1) as it relates to Plaintiffs' claims against WCBOE pursuant to the IDEA because those claims are a review of an administrative hearing decision.

The parties agree that initial disclosures related to the remaining claims that arise outside the IDEA shall be made no more than twenty-eight days following the initial case management conference. However, if the Court denies TDOE's motion to dismiss by ruling that the non-IDEA claims lie against it, then TDOE's initial disclosures related to the remaining claims shall be made either within twenty-eight days of the initial case management conference or of the Court's ruling on TDOE's motion to dismiss, whichever is later.

## F. STAGING OF CASE

**Defendants WCBOE's and TDOE's Position:**

Due to the varying legal standards and the varying factfinders applicable to the separate claims in this case, as well as the fact that TDOE is a Defendant only as related to the IDEA claims; it is the position of Defendants that the matters related to the Plaintiffs' IDEA claims against WCBOE and TDOE should be addressed initially, followed by proceedings against WCBOE and TDOE related to the remaining claims for damages and injunctive relief. Accordingly, the Defendants propose that the Court enter a case management schedule related to the IDEA claims and propose that the parties reconvene for a second Case Management Conference following the conclusion of the IDEA matter. Alternatively, the Defendants propose that at minimum, the parties stage discovery such that discovery related to the IDEA claims is conducted first, followed by discovery related to the remaining claims. Defendants suggest that this would allow the hearing on the IDEA matter to be heard by the Court at an earlier date, while the parties proceed with discovery and motion practice related to the remaining claims.

**Plaintiff's Position:**

Plaintiffs are of the opinion that discovery as to all claims should proceed at this time, and that all claims may be tried simultaneously despite the varying legal standards and factfinders. Accordingly, Plaintiffs ask that this Court establish case management deadlines for discovery and motion practice as to all claims. The parties, after good faith consultation, are unable to reach agreement as to this issue, and seek the court's assistance at the Case Management Conference.

G. **CASE RESOLUTION PLAN AND JOINT STATUS REPORTS**:

Approximately fourteen (14) days after conclusion of fact discovery but before any dispositive motions, the parties shall submit a joint report confirming that the parties made a good faith attempt to resolve the case. The joint report shall also state whether the parties believe ADR might assist in resolution of the case. If a judicial settlement conference is requested in either joint report or separately, the parties shall also state (i) the reason why mediation is not feasible; (ii) their proposed timing for scheduling of the settlement conference; and (iii) any preference of a particular Magistrate Judge to conduct the settlement conference.

**H. DISCOVERY:**

**Plaintiffs' Position**

A discovery plan is needed given the Plaintiffs' have claims other than the IDEA claims which have been exhausted. As noted above, Plaintiffs oppose staging of discovery .

**Defendants' Position**

Defendants suggest the following approach to discovery: As to the IDEA claims, Plaintiffs will file a motion on or before September 30, 2024 to present additional evidence pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii). If the motion is granted, Plaintiffs will seek discovery for that purpose. Defendants will oppose Plaintiffs' presentation of additional evidence and contend there is no need for discovery as the decision is limited to a review of the administrative record. Accordingly, the issue of discovery between Plaintiffs and Defendants with respect to the claims related to the appeal of the final order in the underlying due process case is reserved for further discussion during the initial case management conference. However, if Plaintiffs' motion to supplement the administrative record is granted, Defendant suggests that initial discovery be limited to those areas of inquiry related to the IDEA claims, but further agree that any such discovery that is also relevant

to the remaining claims may be used in later portions of these proceedings. Because the parties have consulted in good faith and cannot agree, all other discovery deadlines are reserved for discussion during the initial case management conference.

No discovery disputes may be brought to the Court for resolution before lead counsel for all parties has conducted an in-person meeting and made a good faith effort to resolve any disputes.[1] Discovery disputes that cannot be resolved after the in-person meeting should be brought promptly to the attention of the judge presiding over case management by a request for a discovery conference. It will be within the judge's discretion whether to allow for the filing of discovery-related motions. In connection with any discovery conference or discovery motion, the Court may require the parties to file a joint discovery dispute statement, of no more than 3 pages per affected party per issue, which identifies and describes the specific discovery request(s) in dispute and details each party's position with supporting facts and legal authorities, including as to any proportionality considerations. The joint discovery dispute statement shall certify that lead counsel for all parties conducted the aforementioned in-person meeting and made a good faith effort to resolve each discovery dispute presented in the statement. If the joint statement is filed and is sufficiently detailed, any party may adopt by reference the joint statement for purposes of Local Rule 7.01, but must clearly state in the filing made in accordance with the timing requirements of Local Rule 7.01 that the joint statement is adopted as the party's memorandum of law or response

I. **MOTIONS TO AMEND OR ADD PARTIES**:

Any motions to amend or to add parties shall be filed no later than 90 days prior to the close of discovery as determined during the initial case management conference. Any motion to amend

[1] In submitting the proposed case management order, the parties shall not modify the requirement for an in-person meeting involving lead counsel. Should the parties seek to confer about discovery disputes in a manner other than an in-person meeting, they may do so only with leave of the Court.

must be accompanied by the proposed amended pleading, which shall be appended as an exhibit to the motion. Prior to filing the motion to amend, counsel for the moving party shall discuss the proposed amendment with all other counsel and shall state in the motion to amend whether or not the motion is opposed.

**J. DISCLOSURE OF EXPERT WITNESSES:**

**Plaintiff's Position:**

The state hearing officer refused to allow the Plaintiffs more than one-half day to present its case (including rebuttal). Consequently a number of witnesses may be necessary to add to the record. Therefore a scheduling order is necessary to include disclosure of all expert witnesses and expert depositions.

**Defendants' Position:**

With respect to the claims against Defendants regarding the appeal of the IDEA claims in the underlying due process matter, if Plaintiffs' motion to supplement the administrative record is denied, no supplemental expert disclosures or reports beyond those previously disclosed during the underlying due process hearing shall be necessary or permitted. If Plaintiffs' motion to supplement the administrative record is granted, the deadline for disclosure of additional expert witnesses shall be discussed in a subsequent case management conference.

Deadlines for disclosure of expert witnesses regarding claims other than the IDEA claims on appeal from the underlying due process case shall be discussed during the initial case management conference for the reasons discussed above.

K. **ADMINISTRATIVE RECORD**:

Defendant WCBOE shall file with the Court the administrative record, under seal in accordance with procedures in Section P, on or before August 30, 2024. By agreement of the

parties, the administrative record shall only be served upon Plaintiffs, as Defendant TDOE was not a party to the underlying due process case and Plaintiff S.B. is a minor student with privacy rights pursuant to the Individuals with Disabilities Education Act ("IDEA"), the Federal Educational Rights and Privacy Act ("FERPA"), and the Health Insurance Portability and Accountability Act ("HIPAA"). If the Court denies TDOE's motion to dismiss, then the administrative record shall also be served upon TDOE. [Plaintiff's Position]: If the Court denies TDOE's motion to dismiss, then the administrative record may be served upon TDOE subject to further order of the Court.

L. **DISPOSITIVE MOTIONS:**

As provided above, the parties must attempt to resolve the case before the filing of dispositive motions.

If Plaintiffs' Motion to Supplement the Administrative Record is denied, the IDEA claims against WCBOE that are related to the appeal of the final order of the underlying due process matter shall be resolved by briefing. A deadline for the filing of motions for judgment on the administrative record is reserved for further discussion during the initial case management conference. If Plaintiffs' Motion to Supplement the Administrative Record is granted, deadlines for filing of dispositive motions shall be reserved for discussion during a subsequent case management conference.

Deadlines for dispositive motions regarding claims outside of those related to the IDEA claims on appeal from the underlying due process matter are reserved for discussion during the initial case management conference.

Responses to dispositive motions shall be filed within 28 days after the filing of the motions. Briefs or memoranda of law in support of or in opposition to a dispositive motion shall not exceed

25 pages. Optional replies may be filed within 14 days after the filing of the responses and shall not exceed 5 pages.

No motion for partial summary judgment shall be filed except by permission of the Court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel, and the Court. Before filing a summary judgment motion, attorneys are required to read and follow Judge Richardson's guidance in *McLemore v. Gumucia*, 619 F. Supp. 3d 816 (M.D. Tenn. 2021) (*rev'd on other grounds*), regarding what should (or should not) be included in the movant's "statement of undisputed material facts."

**M. ELECTRONIC DISCOVERY:**

With respect to Plaintiffs' IDEA claims regarding the appeal of the final order in the underlying due process matter, no additional discovery will be conducted if Plaintiffs' Motion to Supplement the Administrative Record is denied.

With respect to the discovery regarding the IDEA claims related to the appeal of the underlying due process matter and the additional claims, the parties have reached agreement on how to conduct electronic discovery. Therefore, the default standard contained in Administrative Order No. 174 need not apply to this case. The parties agree that disclosure or discovery of electronically stored information should be requested with as much specificity/particularity as possible to minimize the required expense. Unless otherwise agreed upon, the parties shall disclose/produce documents in image format (e.g., .TIF, or searchable .PDF). However, audio, video, spreadsheets, presentations, databases, and other similar files that cannot be produced in .TIF or .PDF so as to be reasonably reviewable shall be produced as native files. The parties agree that WCBOE may decline to produce documents in native format where such production could create FERPA implications for students or parents who are not parties to this litigation. The parties shall confer in good faith to resolve

any questions about what files shall be produced in native format. Documents produced in image format shall be indexed and individually marked through "bates" stamping. The bates stamp shall not obscure any part of the underlying image and the bates numbers shall be unique, have a consistent format within and between productions, have the same number of digits with no spaces, and be zero-padded. For native files that cannot be bates stamped, the producing party will rename the file with its corresponding bates number with a placeholder image numbered and endorsed as appropriate for that record indicating that the record was produced in native format. Files produced in image format shall also be renamed to correspond with the beginning bates number for each file.

Consistent with Federal Rule of Civil Procedure 34(b)(2)(E)(iii), the parties need not produce the same ESI in more than one form; however, after the production, a party may request that a document be reproduced in color if it will materially aid in understanding the meaning or content of the document, or may request native files for particular documents not previously produced in native format where good cause has been demonstrated (e.g., when the original creation date of a document is an issue and disputed) or when a static image is not reasonably usable (e.g., when a .pdf image is unable to capture/display all column/information contained in a spreadsheet such as an Excel file). The parties agree that it is too early in the litigation to discuss the parameters of any search for potentially relevant ESI, but the parties agree to discuss search parameters, including keyword search terms, and will confer to attempt to reach an agreement once written discovery is propounded that seeks potentially voluminous ESI. The parties shall also take reasonable steps to ensure that documents, ESI, and other tangible objects that are subject to discovery are not destroyed, removed, mutilated, altered, concealed, deleted, or otherwise disposed of.

N. **MODIFICATION OF CASE MANAGEMENT ORDER**:

Any motion to modify the case management order or any case management deadline shall be filed at least seven (7) days in advance of the earliest impacted deadline. Unless it is a joint motion,

the motion for modification must include a statement confirming that counsel for the moving party has discussed the requested modification or extension with opposing counsel and whether or not there is any objection to the requested modification or extension. The motion for modification must also include: (i) the trial date and all deadlines, even unaffected deadlines, so that it will not be necessary for the Court to review one or more previous case management orders in consideration of the motion and (ii) a statement that the requested extension will still conform to the requirements of Local Rule 16.01(h)(1) that no dispositive motion deadline, including repones and reply briefs, shall be later than 90 days in advance of the trial date. Motions for extensions should also detail the moving party's efforts at diligently complying with the originally scheduled deadline and the facts demonstrating good cause for the modification of the deadline as required by Fed. R. Civ. P. 16(b)(4).

O. **REQUESTS TO SEAL DOCUMENTS OR PORTIONS OF DOCUMENTS.**

Any party requesting that documents or portions of documents be sealed, including without limitation for use as exhibits at trial, must file a motion to seal in accordance with Section 5.07 of Administrative Order 167-1 (Administrative Practices and Procedures for Electronic Case Filing) and Local Rules 5.02 and 7.01, which demonstrates compelling reasons to seal the documents and that sealing is narrowly tailored to those reasons. The motion to seal, even if unopposed, must specifically analyze in detail, document by document, the propriety of secrecy, providing factual support and legal citations. Generally, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence is typically enough to overcome the presumption of public assess. Failure to comply with these procedures or to provide sufficiently compelling reasons may result in denial of the request to seal documents or portions of documents. Protective orders should not

provide that documents produced in discovery designated as "confidential" will be automatically sealed upon filing or if used at trial. Any such language in proposed protective orders will be stricken and may result in denial of the motion for entry of the proposed protective order.

P. **ESTIMATED TRIAL TIME AND TARGET TRIAL DATE**.

With respect to Plaintiffs' claims regarding the appeal of the final order in the underlying due process matter, the matter shall be resolved by briefing rather than trial.

With respect to the remaining claims, the jury trial of this action is expected to last approximately 3 days. The parties agree that a trial date at this time would be premature, due to the staging of proceedings outlined in Section F. [Plaintiff's Position] Depending on the claims to be tried, a trial of 5 days may be required.

It is so **ORDERED.**

____________________________________
UNITED STATES MAGISTRATE JUDGE

APPROVED FOR ENTRY:

/s/ Michael F. Braun

Michael F. Braun 032669
Attorney for Plaintiffs
2016 8th Ave. South
Nashville, TN 37203
mfb@braun-law.com

/s/ Michael F. Braun

Janet H. Goode 035872
Attorney for Plaintiffs
917 S. Cooper St.
Memphis, TN 38104
janet@janetgoodelaw.com

/s/ Margaret A. McCloud
______________________________
Margaret A. McCloud 022915
Deanna L. Arivett
Attorneys for Defendant WCBOE
567 Cason Lane, Suite A
Murfreesboro, TN 37130
angel@arivettlaw.com
deanna@arivettlaw.com

/s/ Lisa Carson
______________________________
Lisa Carson 014782
4068 Rural Plains Circle, Suite 100
Franklin, TN 37064
lcarson@buergerlaw.com
Attorney for Defendant WCBOE

/s/ Trenton Meriwether
______________________________
Trenton Meriwether 038577
Attorney for Defendant TDOE
P.O. Box 20207
Nashville, Tennessee 37202
615-253-3211
trenton.meriwether@ag.tn.gov